Filed 1/22/25  In re T.R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re T.R., et al., Persons Coming Under the Juvenile Court Law. | B333226, B337336 (Los Angeles County Super. Ct. No. 23CCJP02383A–E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>I.R.,<br><br>　　　Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.    INTRODUCTION

The juvenile court terminated jurisdiction over siblings T.R.[1], N.R., Z.R., J.R., and O.R. (the children) and issued a juvenile custody order granting mother T.Z. full legal and physical custody of and father I.R. monitored visits with the children.  Father contends the court abused its discretion in ordering his visits be monitored.[2]  We affirm.

## II.    BACKGROUND

On July 18, 2023, the Los Angeles County Department of Children and Family Services (Department) filed a Welfare and

_____

[1]    T.R. turned 18 in September 2024 and is not a subject of this appeal.

[2]    In separate appeals, father appealed from the court's jurisdiction and disposition findings and orders (case no. B333226) and its juvenile custody order (case no. B337336).  We granted father's motion to consolidate these appeals and consolidated them in appeal case number B333226.

2

Institutions Code section 300[3] petition that alleged, as later sustained as to father, counts under subdivisions (a) and (j).

The sustained a-1 count alleged:

"[F]ather . . . physically abused . . . [N.R.] On 6/9/2023, . . . father forced [then 13-year-old N.R.] to crouch down against a wall twice for approximately 10–13 minutes each time. As a result, the child felt pain, stated that he was going to pass out, and causing [*sic*] the child's knees to bruise and dislocate. On a prior occasion on or about May 2023, . . . father pulled [N.R.] out of the bed by the child's shoulders, causing the child's shoulder to dislocate and inflicting bruising to the child's shoulders. . . . [M]other . . . knew of . . . father's physical abuse of [N.R.] and failed to protect the child by allowing . . . father to continue to reside in the children's home and have unlimited access to the children. Such physical abuse was excessive and caused [N.R.] unreasonable pain and suffering. Such physical abuse of [N.R.] by . . . father, and . . . mother's failure to protect, endangers the child's physical health and safety, creates a detrimental home environment and places [N.R.] and the child's siblings, [T.R., Z.R., J.R., and O.R.] at risk of serious physical harm, damage, danger, physical abuse and failure to protect."

The sustained a-2 count alleged:

"[F]ather . . . has a history of violent and assaultive behavior, in the presence of the children. On 6/23/2023, . . . father placed the adult sibling, [Na.R.] in a chokehold, in the family home and in the presence of the children. . . . [F]ather placed his right hand over the adult sibling's mouth and his left hand over her throat, and . . . father bit the adult sibling,

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

3

inflicting bite marks and injuries to her neck.  As a result, the adult sibling [M.R.] intervened and . . . father pinn[ed] both [M.R.] and [Na.R.] to the floor.  The minor [T.R.] then intervened to defend his siblings and placed his father in a chokehold.  As a result of the incident, . . . father was arrested and convicted for 243(D) PC-BATTERY WITH SERIOUS BODILY INJURY. . . . [F]ather's violent and assaultive behavior endangers the children's physical health and safety, creates a detrimental home environment, and places the children at risk of serious physical harm, damage, and danger."[4]

The sustained j-1 count alleged father's physical abuse of N.R. alleged in count a-1 and mother's knowledge of and failure to protect N.R. from that abuse endangered N.R.'s physical health and safety, created a detrimental home environment and placed N.R. and his siblings, T.R., Z.R., J.R., and O.R. at risk of serious physical harm, damage, danger, physical abuse, and failure to protect.

At the September 26, 2023, jurisdiction hearing, the juvenile court stated it was "appalled" that father disciplined N.R. by making him do "wall-sits" given N.R.'s medical condition—N.R. suffered from Ehlers Danlos Syndrome which caused his joints to dislocate very easily with any type of strain or force.  The court described father's discipline as "very egregious," "completely inappropriate," and "akin to torture."

---

[4]    As to mother, the juvenile court dismissed count a-1 and sustained count b-1 (failure to protect) that was based on the conduct alleged in count a-1.  The court also purported to dismiss count b-2 (failure to protect) as to mother, but that count did not include allegations about mother.

4

At the October 25, 2023, disposition hearing, the juvenile court declared the children dependents of the court and ordered them removed from father and placed with mother. The court ordered father to participate in a 52-week domestic violence program, a developmentally appropriate parenting course, and individual counseling to address case issues "to identify triggers and source of angry outburst, to learn healthy ways to communicate, and to identify purposeful and appropriate discipline for children who are special needs or struggle with chronic medical conditions."[5] It granted father monitored visitation with the children with a Department-approved monitor, not to include mother.

In a December 15, 2023, Last Minute Information for the Court, the Department informed the juvenile court that father did not want to reunify with the children and was "content" with mother having physical custody. Once the case was closed, father wanted to move to Colorado. He was applying for a new job and asked the Department if he could visit the children once a month if he was hired. Currently, father was visiting the children once a week.

Father had completed 16 of his 52 domestic violence classes and was participating in a parenting class. He had not enrolled in individual counseling. Father understood he needed to complete his court-ordered services for the Department to liberalize visits with the children prior to closing the case.

---

[5] The "Court-Ordered Case Plan" form does not list O.R. The court's disposition order for O.R., however, stated, "Court ordered disposition case plan is signed by the Court and filed this date. Said order is incorporated herein."

In its April 10, 2024, report for the section 364 status review hearing, the Department reported that father was employed as a long-haul truck driver and traveled between various states.  Father was homeless and living in his truck.

Father was in partial compliance with his court-ordered services.  He visited with the children consistently and his visits were reported to be engaging—he would inquire about school, church, and the children's interests.  The visitation monitor had not reported any concerns.  Father did not want to reunify with the children as mother was able to meet their needs, but he did want to have unmonitored visits with them.

During the reporting period, father "continue[d] to minimize the incident that took place and [felt] that the Department and Court [were] making more of the situation than it [was].  Father [had] shown little remorse.  Despite him having completed over half of his domestic violence classes."

Father had attended 35 of 52 domestic violence classes and had missed no classes.  The progress note stated father showed positive participation in group sessions and good comprehension of the program's curriculum.  Father also had attended 35 of 52 parenting classes.  A progress letter stated father displayed positive participation and progress.  Father had not enrolled in individual counseling.  He explained he was having difficulty finding a therapist who would meet with him monthly due to his work schedule.

The Department did not believe it was appropriate to liberalize father's visits with the children.  Father continued to have a peaceful contact order from his criminal case and T.R. did not want to visit with father due to father's assault on Na.R. and father's lack of accountability for his actions.  Moreover, during

6

the initial investigation and in subsequent months, father made statements that suggested he did not believe his disciplinary methods were inappropriate or that he had impulse control or anger management issues. Father believed the Department's concern about the children's safety was "blown out of proportion" and "the reasons for this case to be open should be dismissed."

J.R. and O.R. enjoyed spending time with father, but were unable to understand the severity of the events that led to the dependency case as they did not witness them. N.R. and Z.R. chose not to visit father at times. When they visited, they appeared to enjoy their time with father.

In an April 24, 2024, Last Minute Information for the Court,[6] the Department recommended the juvenile court terminate jurisdiction and family maintenance services and issue a family law order giving mother sole legal and primary physical custody and granting father monitored visits with the children.

At the April 24, 2024, section 364 hearing, father's counsel joined the Department's recommendation that the juvenile court terminate jurisdiction, but requested father have unmonitored visitation with the children. Father testified he was in week 36 of his 52-week parenting course and his domestic violence program. Only time barriers prevented him from completing more classes. He had not participated in any individual counseling.

In his parenting course, father learned to take accountability, there were alternative ways to discipline, how

---

[6] The information is stamped as having been filed on April 25, 2024. At the section 364 hearing on April 24, 2024, the juvenile court stated the information was marked and received into evidence and e-filed that day.

parenting is and should be done, and how to express concerns and needs. In his domestic violence class he also learned not to get angry; how to notice red flags, set boundaries, and protect himself from losing his family, freedom, and finances; and to be more aware of his actions. He also learned that physical discipline is unacceptable and there should be alternative forms of discipline.

Father learned that the incident with N.R. was inappropriate. There were other ways he could have disciplined N.R. such as taking away digital devices, restricting activities, or verbal warnings. His actions in the incident with Na.R. were "totally inappropriate" and he was remorseful.

Father had apologized to the children multiple times in monitored visits. He recalled them responding, "[I]t's okay. We understand."

The juvenile court stated father's testimony did not persuade it to grant father unmonitored visits with the children. The court found father's testimony vague and unspecific. Father had not testified about the cycle of domestic violence and so had "learned nothing from that." Although father testified he learned physical discipline was unacceptable and claimed the children said everything was fine, T.R. did not want to visit with father because father had not taken accountability for his actions.

The juvenile court noted there was an existing criminal protective order and said, "I don't believe that that means that father can have unmonitored contact with these children, and I don't believe that father has learned—that father's participation in the programs at this time warrants it."

The juvenile court awarded mother sole legal and physical custody of the children. It granted father monitored visits with

the children three times a week for three hours and a visit on Father's Day for three hours. The court explained to father that a file would be opened in family court immediately after the dependency case was closed. Father could go to family court to seek any future modifications of the visitation order. The juvenile court terminated and stayed termination of jurisdiction pending receipt of a juvenile custody order.

On April 30, 2024, the juvenile court received and signed the juvenile custody order. The court awarded mother legal and physical custody of the children. Father was granted monitored visits with the children in compliance with the criminal protective order three times a week for three hours. The juvenile custody order provided that father's visitation would be supervised because he had not completed and/or made substantial progress in his domestic violence program, parenting classes, and individual counseling. The court lifted the stay and terminated jurisdiction.[7]

### III.   DISCUSSION

Father contends the juvenile court's custody order granting him monitored visitation was an abuse of discretion. We disagree.

"When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court." (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30, fn.

---

[7]     The juvenile custody order concerned all the children. The court's minute orders did not include T.R.

omitted.)  "'[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).'  ([*In re* ]*Nicholas H.* [(2003)] 112 Cal.App.4th [251,] 265, fn. 4.)  We review the juvenile court's exit orders for an abuse of that discretion.  (See, e.g., *In re Maya L.* (2014) 232 Cal.App.4th 81, 102; [*In re* ]*Jennifer R.* [(1993)] 14 Cal.App.4th [704,] 711; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)"  (*In re J.M.* (2023) 89 Cal.App.5th 95, 112–113.)

At the disposition hearing, the juvenile court ordered father to participate in a 52-week domestic violence program, a parenting course, and individual counseling to address case issues including identifying appropriate discipline for children who struggle with chronic medical conditions.  It determined that father's visitation with the children should be monitored.  By the time of the section 364 hearing six months later, father had diligently participated in his domestic violence program and parenting course having attended 36 of 52 sessions, but he had not yet completed them.  Father also had not enrolled in individual counseling.

In its section 364 status report, the Department recommended against liberalizing father's visitation with the children.  It reported father continued to minimize his conduct that led to the dependency case, made statements that suggested he did not believe his disciplinary methods were inappropriate, and believed the Department's concern about the children's safety was "blown out of proportion."  The juvenile court found father's testimony at the section 364 hearing about his insight into his conduct unpersuasive.

In light of father's incomplete performance of his domestic violence program and parenting course, his failure to enroll in individual counseling, and his lack of insight about the inappropriateness of his disciplinary methods, the juvenile court did not abuse its discretion in declining to liberalize father's visitation with the children to unmonitored.  (*In re C.W.* (2019) 33 Cal.App.5th 835, 863; *In re Nicholas H., supra*, 112 Cal.App.4th at p. 265.)

## IV.    DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.


We concur:


BAKER, Acting P. J.


MOOR, J.